

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE CITY OF EL PASO, TEXAS, | § | |
| | | No. 08-13-00187-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 3 |
| HIGH RIDGE CONSTRUCTION, INC., | § | |
| | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2011DCV00361) |
| | § | |

## O P I N I O N

This is an accelerated appeal from an order denying a plea to the jurisdiction filed by the City of El Paso.  *See* TEX.CIV.PRAC.&REM.CODE ANN. §51.014(a)(8)(West Supp. 2013).  We reverse in part and affirm in part.

### FACTUAL SUMMARY

In 2009, Congress enacted the American Recovery and Reinvestment Act (ARRA) in response to the Great Recession.  As a result of ARRA, the federal government provided increased funding for weatherization services.  Those funds were administered by the Texas Department of Housing and Community Affairs (TDHCA) though local weatherization grants distributed to large cities, councils of government, and community action programs on a one-time basis.  In order to receive these funds, the City entered into a contract with TDHCA to administer $4,007,592 of ARRA funds through the El Paso Weatherization Assistance Program

(EP-WAP). Under the EP-WAP, the City reimbursed TDHCA-approved contractors who provided weatherization services, including the installation of energy efficient appliances, in qualified low income residential properties.[1]

On March 23 2010, the City Council passed a resolution authorizing the City Manager to execute standard contracts between the City of El Paso and TDHCA-approved contractors to perform eligible weatherization energy conservation services on approved residential units pursuant to the EP-WAP. The following day, the City entered into a contract with High Ridge Construction, Inc. to deliver energy assessment and weatherization emergency conservation installment services related to the EP-WAP for eligible residential properties in El Paso. The contract expressly provided that the City would not pay High Ridge more than $600,000 for services performed under the contract.

The City hired employees to supervise and administer the EP-WAP. Ed Gonzalez served as the EP-WAP Project Coordinator and Robert Veliz served as the Lead Project Inspector. In October 2010, the City became aware that Veliz had issued work orders to High Ridge which exceeded the contractual cap of $600,000 and had authorized High Ridge to perform weatherization services at the Muñoz Apartments without work orders. The City paid High Ridge a total of $1,429,725.72, but it refused to pay an additional $753,869.55 for materials and services High Ridge provided to various residential dwellings, including the Muñoz Apartments.[2] High Ridge filed suit against the City asserting claims for breach of contract and an unconstitutional taking of private property. It asserted that the City's immunity from suit was waived pursuant to Section 271.151 of the Texas Local Government Code. It also claimed that

---

[1] The TDHCA required that priority be given to households with elderly persons, persons with disabilities, households with young children under the age of five and households with a high energy burden.

[2] High Ridge asserts it is owed $662,609 for the materials and services provided to the Muñoz Apartments without work orders.

the City is estopped from denying its contractual obligations because it had accepted the benefits of High Ridge's performance under the contract. The City answered and filed a plea to the jurisdiction asserting governmental immunity.

After High Ridge amended its petition, the City filed another plea to the jurisdiction. High Ridge subsequently filed its second amended petition which continued to assert its breach of contract and unconstitutional takings claims and added a claim of equitable estoppel. In response, the City filed a plea to the second amended petition. In this plea, the City challenged High Ridge's pleadings on their face and based on jurisdictional evidence attached to the plea. The trial court denied the plea to the jurisdiction.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party challenges the court's authority to determine the subject matter of the action. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bland Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The burden is on the plaintiff to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Texas Department of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *City of El Paso v. Mazie's, L.P.*, 408 S.W.3d 13, 18 (Tex.App.--El Paso 2012, pet. denied). Whether a party has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law which is subject to *de novo* review. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Mazie's*, 408 S.W.3d at 18. Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law subject to *de novo* review. *Miranda*, 133 S.W.3d at 226. In some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.*

In a plea to the jurisdiction, a defendant may challenge the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Miranda*, 133 S.W.3d at 226-27. Here, the City's plea to the jurisdiction is directed both at the pleadings and the existence of jurisdictional facts. When examining the pleadings, we construe them liberally in favor of conferring jurisdiction. *See Texas Department of Transportation v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id*. at 227.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the appellate court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues presented. *Miranda*, 133 S.W.3d at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228. Under this standard, when reviewing a plea in which the pleading requirement has been met, we credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id*. The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id*. If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea

to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227-28. The trial court rules on the plea to the jurisdiction as a matter of law if the relevant jurisdictional evidence is undisputed or it fails to raise a fact question on the jurisdictional issue. *Id.* at 228.

## GOODS OR SERVICES

Issues One and Two are related. In Issue One, the City asserts that it retains its governmental immunity from suit for breach of contract because High Ridge has failed to allege that the weatherization contract provided goods or services to the City. In its second issue, the City argues that it retains its governmental immunity from suit for breach of contract because the undisputed jurisdictional evidence negates that High Ridge provided goods or services to the City. We will consider Issue Two first because it will unnecessary to examine the sufficiency of the pleadings if the jurisdictional evidence negates jurisdiction.

### *Governmental Immunity*

Sovereign immunity protects the State from lawsuits for money damages. *Reata Construction Corporation v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Texas Natural Resource Conservation Commission v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002). It also deprives a trial court of subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 224. Political subdivisions of the state, including cities, are entitled to such immunity—referred to as governmental immunity—unless it has been waived. *Reata*, 197 S.W.3d at 374.

Governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). By entering into a contract, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive

- 5 -

immunity from suit. *Tooke,* 197 S.W.3d 332. The Supreme Court noted in *Tooke* that it has "consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function." *Id.* To ensure that this legislative control is not lightly disturbed, a waiver of immunity must be clear and unambiguous. *Id.* at 332-33.

*Governmental-Proprietary Dichotomy*

The City's arguments on appeal include an assertion that it is entitled to governmental immunity from suit for breach of contract because it was exercising a governmental function when it entered into the weatherization contract, namely, community development activities authorized under Chapters 373 and 374 of the Local Government Code. *See* TEX.CIV.PRAC.& REM.CODE ANN. §101.025(a)(34)(West 2011)(designating as a governmental activity "community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code"). Citing *City of San Antonio ex rel. City Public Service Board v. Wheelabrator Air Pollution Control, Inc*., 381 S.W.3d 597, 603-04 (Tex.App.--San Antonio 2012, pet. denied), High Ridge responds that the governmental-proprietary dichotomy does not apply to breach of contract claims, and even if it does, the City failed to prove that the weatherization contract qualifies as a community development program under Section 373.005 of the Local Government Code.

When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). As a home rule city, El Paso derives its powers from the Texas Constitution, not the Legislature. *See* TEX.CONST. art. XI, § 5; *see City of Galveston*, 217 S.W.3d at 469. It has "all the powers of the

state not inconsistent with the Constitution, the general laws, or the city's charter." *See City of Galveston*, 217 S.W.3d at 469, *quoting Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998). Among those powers is immunity from suit for governmental functions. *City of Galveston*, 217 S.W.3d at 469. Consequently, the question is not whether any statute grants a home-rule city immunity from suit, but whether any statute limits its immunity from suit. *Id.* Such limits exist only when a statute speaks with "unmistakable clarity." *Id., quoting Proctor*, 972 S.W.2d at 733.

For many years, intermediate appellate courts have applied the governmental-proprietary dichotomy to breach of contract claims asserted against municipalities. *See City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803, 810-11 & n.4 (Tex.App.--Austin 2013, pet. filed). The Eighth Court of Appeals is among those courts. *See Williams v. City of Midland*, 932 S.W.2d 679, 683-84 (Tex.App.--El Paso 1996, no writ). The Texas Supreme Court called this approach into question in *Tooke v. City of Mexia*, when it observed that "we have never held that this same distinction determines whether immunity from suit is waived for breach of contract claims . . . ." 197 S.W.3d 325, 343 (Tex. 2006); *see City of Georgetown*, 413 S.W.3d at 810. The Supreme Court did not finally decide the issue in *Tooke* because the case involved a governmental function; consequently, even assuming the dichotomy applied, the municipality had governmental immunity. *City of Georgetown*, 413 S.W.3d at 810. After *Tooke*, some intermediate appellate courts have assumed without deciding that the dichotomy applies to contract claims. *See e.g., East Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 731 (Tex.App.--Houston [1st Dist.] 2009, no pet.); *City of Emory v. Lusk*, 278 S.W.3d 77, 83 (Tex.App.--Tyler 2009, no pet.); *City of Houston v. Petroleum Traders Corporation*, 261 S.W.3d 350, 355-56 (Tex.App.--Houston [14th Dist.] 2008, no pet.); *City of Weslaco v. Borne*, 210 S.W.3d 782, 791-92 (Tex.App.--Corpus Christi 2006, pet. denied).

The San Antonio Court of Appeals reached a different conclusion in the context of a common law quantum meruit claim. *Wheelabrator*, 381 S.W.3d at 603-04. The court rejected Wheelabrator's attempt to "import the proprietary/governmental distinction from the Texas Tort Claims Act into this quasi-contractual context." *Id.* The court found it significant that when the Legislature enacted Chapter 271 in 2005 it "could have incorporated the proprietary/governmental distinction into the statutory waiver scheme for contract claims" but it did not do so. *Id*, at 603. Further, it interpreted *Tooke* as holding that sovereign immunity is the "default" rule for municipalities with respect to all types of claims. *Tooke*, 197 S.W.3d at 331-32. Thus, the court of appeals held that the City Public Service Board was immune from suit on the quantum meruit claim. *Wheelabrator*, 381 S.W.3d at 605. The Austin Court of Appeals disagreed with *Wheelabrator* in *City of Georgetown*, 413 S.W.3d at 811-13, but the Amarillo Court of Appeals followed *Wheelabrator* in *Republic Power Partners, L.P. v. City of Lubbock*, 424 S.W.3d 184 (Tex.App.--Amarillo 2014, no pet. h.).

Like the Austin Court of Appeals in *City of Georgetown*, we are reluctant to overrule our own precedent unless and until the Texas Supreme Court addresses whether the governmental-proprietary dichotomy applies to a breach of contract claim asserted against a municipality. *See City of Georgetown*, 413 S.W.3d at 811. At the same time, we recognize that we must begin our analysis with the presumption that the City is immune from suit for breach of contract. *See City of Galveston*, 217 S.W.3d at 469. High Ridge had the burden in the trial court to show that the City's immunity from suit has been limited. Significantly, High Ridge never asserted in its pleadings that the City was not entitled to immunity because it was engaged in a proprietary function. To the contrary, High Ridge has taken the position that the governmental-proprietary dichotomy is completely inapplicable. Further, High Ridge did not allege any jurisdictional facts

- 8 -

that demonstrate its claims arose from proprietary functions. *See Weir Brothers, Inc. v. Longview Economic Development Corporation*, 373 S.W.3d 841, 846 (Tex.App.--Dallas 2012, no pet.); *City of Weslaco*, 210 S.W.3d at 791 ("[T]he burden in this case was on appellees to overcome immunity to suit by alleging jurisdictional facts to demonstrate that their claims against appellants arose from proprietary functions."). Consequently, we begin with the presumption that the City is immune from suit. *See City of Galveston*, 217 S.W.3d at 469.[3] The only issue before us is whether that immunity is waived under Section 271.152 of the Local Government Code.

*Waiver of Immunity -- Section 271.152*

Section 271.152 waives qualifying local governmental entities' immunity from suit for certain breach of contract claims. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). It provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX.LOCAL GOV'T CODE ANN. §271.152 (West 2005).

The Supreme Court has held that the statute, when applicable, waives a governmental entity's immunity from suit for breach of written contract by clear and unambiguous language. *Williams*, 353 S.W.3d at 134. Three elements must be established in order for Section 271.152's waiver of immunity to apply: (1) the party against whom the waiver is asserted must be a "local

---

[3] Even if the governmental-proprietary dichotomy applies in this case, the City established it was engaged in community development activities under Section 373.005(b)(2) of the Local Government Code. *See* TEX.LOCAL GOV'T CODE ANN. § 373.005(b)(2)(West 2005)(providing that a community development program may include acquisition, construction, reconstruction, or installation of public works, facilities, sites, or other improvements, including construction, reconstruction, or installation that implements design features or makes improvements that promote energy or water use efficiency); *East Houston Estate Apartments L.L.C. v. City of Houston*, 294 S.W.3d 723, 733 (Tex.App.--Houston [1st Dist.] 2009, no pet.). The TDHCA contract requires the City to administer the EP-WAP pursuant to the Texas Weatherization Program regulations codified in Title 10 of the Texas Administrative Code. As noted by the City in its reply brief, Title 10 is named "Community Development."

governmental entity" as defined by Section 271.151(3); (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must in fact have entered into a contract that is "subject to this subchapter" as defined by Section 271.151 and 271.152 of the Local Government Code. *Williams*, 353 S.W.3d at 134-35; *see El Paso Education Initiative, Inc. v. Amex Properties, LLC,* 385 S.W.3d 701, 706 (Tex.App.--El Paso 2012, pet. denied). Section 271.151(2)(A) defines the phrase "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX.LOCAL GOV'T CODE ANN. §271.151(2)(A) (West Supp. 2013).

The Supreme Court held in *City of Houston v. Williams* that Section 271.151(2)(A) effectively states five elements a contract must meet in order for it to be a contract subject to Section 271.152's waiver of immunity: (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity. *Willliams*, 353 S.W.3d at 135. Chapter 271 does not define the term "services" as it is used in Section 271.152 even though the Legislature has defined it in other contexts. *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*, 320 S.W.3d 829, 839 (Tex. 2010). Absent a definition, the term is broad enough to encompass a wide array of activities. *Id.*, *citing Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)(stating that the term "services" has a rather broad and general meaning and it includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed). The services provided need not be the primary purpose of the agreement, *Kirby Lake*, 320 S.W.3d at 839, but the benefit that the local governmental entity would receive must be direct and unattenuated. *See*

*Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex.App.--Waco 2009, pet. denied)("[T]he statute does not apply to contracts 'in which the benefit that the [local governmental entity] would receive is an indirect, attenuated one.'").

*The Jurisdictional Evidence*

The City asserts, as it did in the trial court, that the undisputed jurisdictional evidence negates that High Ridge provided goods or services to the City as required by Section 271.151(2)(A) because the evidence shows that the City merely acted as a conduit of federal funds and did not receive any direct benefit from High Ridge under the weatherization contract. It relies primarily on *East Houston Estate Apartments, LLC v. City of Houston*, 294 S.W.3d 723 (Tex.App.--Houston [1st Dist.] 2009, no pet.) in support of its argument.

In *East Houston*, the city entered into a loan agreement "to provide funding to a private entity, East Houston, for the purpose of rehabilitating an apartment complex to provide very low-income and low-income housing . . . ." *East Houston*, 294 S.W.3d at 733. Under this agreement, the city agreed to disburse federal funds to East Houston subject to certain terms and conditions as part of an inter-creditor agreement for the financing of the federal government community development program. *Id.* at 735. The city argued that the loan agreement did not require East Houston to provide anything that could be construed as a service to the city, but East Houston claimed that it was effectively providing low-income housing as a service to the city. *Id.* at 733. The First Court of Appeals observed that the city would benefit in a general way from having the apartment units refurbished and from the availability of additional housing for low-income families, but nothing in the contract obligated East Houston to provide any municipal service directly to the city. *East Houston*, 294 S.W.3d at 736. The central purpose of the agreement was to facilitate a loan of money from the city's portion of federal funds and from

- 11 -

private funds to a private entity, East Houston, for the purpose of renovating East Houston's empty apartment building. *Id.* Given that the city was a conduit of federal funds and a facilitator of the project but no services were directly provided to the city, the First Court of Appeals concluded that this is not the type of "service" contemplated by Section 271.152. *Id.*

High Ridge maintains that *East Houston* is distinguishable because the City received a direct benefit from the warranty and indemnity provisions contained in the weatherization contract. The weatherization contract provides that the City engaged the services of High Ridge "to deliver, ***on behalf of the City***, energy assessment and weatherization emergency conservation installment services related to the City's Weatherization Program for eligible residential properties in the City of El Paso." [Emphasis added]. It is undisputed that the weatherization services were provided exclusively to private residential properties. We recognize that the entire community of El Paso generally benefitted from the increased energy efficiency in the residential units which received services as a result of the EP-WAP, but this is an indirect result of the contract. No courts have construed Section 271.152 as permitting a waiver of a local governmental entity's immunity from suit when it generally and indirectly benefits from the contract. To the contrary, courts construing the statute have required that the benefit be direct and not attenuated. We agree with the City that the weatherization services provided by High Ridge to private residential properties did not provide a direct benefit to the City, and therefore, they are not the type of service contemplated by Section 271.152. *See East Houston*, 294 S.W.3d at 736 ("It is clear that, while the City would benefit in a general way from having East Houston's apartment units refurbished and from the availability of more housing for low-income families, nothing in the contract obligated East Houston to provide any municipal service directly to the City."). That does not end our inquiry, however, because the weatherization contract also

required High Ridge to provide a one year warranty to the client and to the City for all weatherization work completed. Further, High Ridge is required by the weatherization contract to indemnify and defend the City from any causes of action and claims arising out of High Ridge's activities under the contract. The warranty and indemnity provisions certainly operate as a direct benefit to the City. We conclude that the weatherization contract contemplates the provision of services directly to the City. *See Kirby Lake*, 320 S.W.3d at 839 (agreement between residential developers and city water control and improvement district authority entailed the provision of goods or services under Section 271.152 where developers agreed to construct, develop, lease, and bear all risk of loss or damage to water and sewer facilities). Issue Two is overruled.

*High Ridge's Pleadings*

We turn now to the sufficiency of High Ridge's pleadings. The only question presented by Issue One is whether High Ridge alleged that the weatherization the contract provided for goods or services to be provided to the City. High Ridge alleged generally in its second amended petition that the City did in fact enter into a contract subject to Chapter 271" and the pleadings specifically reference Section 271.152, but it did not allege that the contract contemplated that goods or services would be provided to the City.

Citing *El Paso Education Initiative, Inc. v. Amex Properties, LLC,* 385 S.W.3d 701, 706 (Tex.App.--El Paso 2012, pet. denied), High Ridge asserts that it is only required to generally allege that the City entered into a contract subject to Chapter 271 and it is not required to allege any of the five elements set forth in Section 271.152. Our decision in *El Paso Education Initiative* does not support High Ridge's argument regarding the sufficiency of its pleadings because the issue in the cited case was whether the jurisdictional evidence showed a waiver of

immunity. *El Paso Education Initiative*, 385 S.W.3d at 705-06. We conclude that High Ridge's pleadings fail to state a waiver of immunity under Section 271.152 because they do not allege that the weatherization contract provided for goods or services to be provided to the City. Issue One is sustained.

## CONTRACTUAL AMENDMENT

Issues Three and Four pertain to the City's argument that High Ridge's breach of contract claim is based on purported amendments of the weatherization contract. In Issue Three, the City contends that its immunity is not waived because High Ridge failed to allege that the purported amendments to the weatherization contract were in writing and properly executed on behalf of the City. Under Section 271.151(2)(A), the contract must be in writing and it must have been property executed on behalf of the local governmental entity. *See* TEX.LOCAL GOV'T CODE ANN. § 271.151(2)(A).

High Ridge alleged in its second amended petition that it entered into the weatherization contract with the City and agreed to perform the work requested by the City. It specifically alleged in paragraphs 9 and 10 of the second amended petition that:

9. Pursuant to the agreement, Plaintiff began work on the Project. Payments were issued by the City in the following manner. The City would request that Plaintiff begin work on certain identified residential properties. Plaintiff would begin, and often complete, the majority of the work/services that were requested by the City. After much of the work/services were completed, the City would issue a work order to Plaintiff that identified minor additional items of work to be completed by Plaintiff on the residential properties. As Plaintiff completed these additional items of work, the City would issue payment to Plaintiff for the goods/work/services that were provided by Plaintiff.

10. The contract provides that its term is from April 26, 2010, until August 31, 2011. The contract also provides that the City would pay Plaintiff the total sum of $600,000 for services performed by Plaintiff on the Project. However, it became clear that the City intended and expected Plaintiff to perform additional work/services on the Project, and pursuant to the contract. Accordingly, the total payments paid to Plaintiff by the City in connection with the Project, and pursuant

- 14 -

to the contract, equal $1,275,856.72. Accordingly, the parties' course of dealing and course of conduct on the Project acknowledged that the City would pay Plaintiff amounts in addition to the $600,000 price originally stated in the contract for the Project. Alternatively, the City has waived any alleged limitation in the contract concerning amounts that can be paid to Plaintiff under the contract.

Under these pleadings, High Ridge admits that it was issued work orders and received payment for the $600,000 in weatherization services it provided under the weatherization contract. Further, High Ridge admits it has been paid $1,275,856.72 in connection with the contract. The pleadings reflect that High Ridge is suing the City for payment on additional weatherization services performed under the weatherization contract.

The City does not assert that the written weatherization contract itself was not properly executed. It instead takes issue with High Ridge's failure to allege that the parties entered into a properly executed contract amendment to "increase the contractual cap from $600,000 to nearly $2,000,000.00." High Ridge specifically alleges that it performed additional work or services on the weatherization project under the contract through additional work orders issued by Robert Veliz and Ed Gonzalez. The City characterizes the pleadings as alleging that these additional work orders were *de facto* contract amendments that increased High Ridge's contract. The City argues that these allegations are legally insufficient to state a breach of contract claim under Section 271.152 because High Ridge does not allege that it received a written contract amendment that was properly executed by the City. Thus, the City maintains that its immunity for this particular breach of contract claim has not been waived.

Section 271.153 permits a plaintiff who has brought a breach of contract action against a local governmental entity to be awarded (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused

- 15 -

delays or acceleration; and (2) the amount owed for change orders or *additional work the contractor is directed to perform by a local governmental entity in connection with the contract*. *See* TEX.LOCAL GOV'T CODE ANN. § 271.153(a)(West Supp. 2013)(Emphasis added). We understand High Ridge to allege that the City has failed to pay it for additional work it was directed to perform by the City. The pertinent statutes do not require that this additional work be supported by a written contract amendment and the City has not cited any controlling case authority. Furthermore, we do not read High Ridge's pleadings as necessarily alleging that the additional work orders were *de facto* contract amendments.

High Ridge has alleged that the City is a "local government entity" under the statute and we have determined that the jurisdictional evidence shows that the City properly executed a written contract with High Ridge for providing goods or services to the City. It is undisputed that the weatherization contract states the "essential terms of the agreement" between the City and High Ridge. Further, High Ridge is seeking to adjudicate its claim for breach of the contract. Therefore, the contract at issue is a "contract subject to this subchapter" under Section 271.151(2), and the City, by entering into the contract has waived its governmental immunity to suit. *See* TEX.LOCAL GOV'T CODE ANN. § 271.152; *City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 447 (Tex.App.--Dallas 2008, pet. denied)(rejecting the city's argument that governmental immunity is waived only for claims of breach of the essential, written terms of an agreement, not for implied duties; once the trial court determines that the contract falls within the provisions of Section 271.152, it need not parse further the pleadings or the contract to determine whether the legislature has waived immunity for breach of contract claims). The City's argument that High Ridge cannot maintain its breach of contract claim for damages in excess of the $600,000 contractual cap unless there is a properly executed written amendment is in reality

an argument that the contract claim will fail on the merits. Such a claim does not deprive the trial court of jurisdiction to hear the claim. *See Roma Independent School District v. Ewing Construction Company*, No. 04-12-00035-CV, 2012 WL 3025927, at *3 (Tex.App.--San Antonio July 25, 2012, pet. denied)(memo op.)(an argument that the breach of contract claim will fail does not deprive the trial court of jurisdiction to hear the contract claim); *see also City of North Richland Hills v. Home Town Urban Partners, Ltd*., 340 S.W.3d 900, 905 (Tex.App.--Fort Worth 2011, no pet.)(court of appeals rejected city's argument that the trial court lacked subject matter jurisdiction over a breach of contract claim because the plaintiff's alleged damages did not fall within those available under Chapter 271; Chapter 271 is not a basis for a governmental entity to claim that the trial court lacks jurisdiction). Issue Three is overruled.

*Jurisdictional Evidence*

In Issue Four, the City contends that it retains its immunity from suit for the breach of contract claim because the undisputed jurisdictional evidence negates High Ridge's allegations that it performed services under the EP-WAP pursuant to a properly executed contract. As noted in our discussion of Issue Three, High Ridge alleged that it performed additional work under the weatherization contract pursuant to work orders issued by Robert Veliz and Ed Gonzalez. The City is correct that the contract provides that it could be amended at any time by mutual agreement of the parties, and it could only be amended by written instrument duly executed on behalf of the City and High Ridge. The City offered evidence that the City Manager is the only person who could enter into contracts with contractors under the EP-WAP. Further, there is evidence that Mr. Veliz did not have authority to issue work orders. Thus, the City reasons that the jurisdictional evidence "negates High Ridge's jurisdictional allegation that its weatherization

contract was amended through a written instrument that was properly executed on behalf of the City."

High Ridge did not allege that the weatherization contract had been amended. Its second amended petition instead alleges that it performed additional work under the contract pursuant to work orders issued by Mr. Veliz and Mr. Gonzalez. The City's argument that High Ridge cannot maintain its breach of contract claim unless there is a written contract amendment is in reality an argument that the contract claim will fail on the merits. Such a claim does not deprive the trial court of jurisdiction to hear the claim. *See Roma Independent School District*, 2012 WL 3025927, at *3; *see also City of North Richland Hills*, 340 S.W.3d at 905. Accordingly, we overrule Issue Four.

## UNCONSTITUTIONAL TAKINGS CLAIM

In its fifth issue, the City asserts that it retains its immunity from suit for High Ridge's claim that the City unconstitutionally took its property because High Ridge failed to allege that the City intended to exercise its eminent domain powers to take High Ridge's private property. High Ridge responds that its second amended petition contains the necessary allegations required to state a claim for an unconstitutional taking.

Article I, Section 17 of the Texas Constitution provides that: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX.CONST. art. I, § 17. This provision, like the Fifth Amendment to the United States Constitution, applies not only to traditional takings claims, but also to inverse condemnation claims, in which a property owner alleges that the government has usurped the use and value of his or her property, even if it has not completely appropriated title. *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*,

320 S.W.3d 829, 844 (Tex. 2010).

A takings claim consists of three elements: (1) an intentional act by the government under its lawful authority, (2) resulting in a taking, damaging, or destruction of the plaintiff's property, (3) for public use. *General Services Com'n v. Little-Tex Insulation Company, Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Mazie's*, 408 S.W.3d at 19; *City of El Paso v. Ramirez*, 349 S.W.3d 181, 186 (Tex.App.--El Paso 2011, no pet.). The City does not have immunity from a valid takings claim. *Mazie's*, 408 S.W.3d at 18, *citing Little-Tex Insulation Company*, 39 S.W.3d at 598. If, however, the plaintiff fails to allege a valid takings claim, the City retains its immunity from suit. *Mazie's*, 408 S.W.3d at 19, *citing Little–Tex Insulation*, 39 S.W.3d at 598.

The Supreme Court stated in *Kirby Lake* that when a private party contracts with the government, generally "the State does not have the requisite intent under constitutional-takings jurisprudence when it withholds property or money from an entity in a contract dispute." *Kirby Lake,* 320 S.W.3d at 844*, quoting Little-Tex Insulation Company*, 39 S.W.3d at 598-99. In that situation, "the State is acting within a color of right under the contract and not under its eminent domain powers." *Id.*, *quoting Little-Tex Insulation Company*, 39 S.W.3d at 599.

High Ridge alleged in its second amended pleading that the City has intentionally taken and obtained the benefit of the materials and work which High Ridge provided to the properties described in the pleadings, the property has been taken for a public use, and the City has refused to provide it with just compensation for the property. High Ridge expressly incorporated the portion of its pleadings related to its claim for breach of contract. The pleadings demonstrate that High Ridge voluntarily provided the property and services pursuant to the contract under the EP-WAP and the City has withheld payment under a contractual dispute. Thus, the pleadings affirmatively show that the City did not have the requisite intent to take High Ridge's property

under its eminent domain powers. *See Kirby Lake*, 320 S.W.3d at 844; *Little-Tex Insulation Company*, 39 S.W.3d at 599 (state university's withholding of additional payments to building contractor, which submitted claim for expenses allegedly not contemplated by original contract, did not give rise to an action by contractor for compensation under takings clause of the Texas Constitution; since university was acting under colorable contractual rights, it did not have requisite intent to take contractor's labor and materials under any eminent domain powers); *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex.Civ.App.--Austin 1951, writ ref'd)(where plaintiff entered into a contract with the state for the printing of cigarette tax stamps, and plaintiff voluntarily manufactured the stamps and delivered them to the state, but the state refused to pay the plaintiff for the stamps because the state had not followed competitive bid procedures when it award the contract to the plaintiff; held that the plaintiff could not maintain a takings claim against the state for its refusal to pay the plaintiff for the stamps due to because the state was not exercising its power of eminent domain). Consequently, the City retains its immunity from suit for this claim. Issue Five is sustained.

## ESTOPPEL

Issues Six and Seven address High Ridge's assertion of estoppel. In Issue Six, the City maintains that its immunity from suit for High Ridge's equitable estoppel claim has not been waived because High Ridge's pleadings do not support application of the limited "justice requires" exception. The City argues in Issue Seven that the undisputed jurisdictional evidence negates application of the "justice requires" exception to the City's immunity from the equitable estoppel claim.

It has long been the rule in Texas that a city cannot be estopped from exercising its governmental functions. *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773

- 20 -

(Tex. 2006), *citing City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970)(city not estopped from enforcing zoning restrictions) and *Rolison v. Puckett*, 145 Tex. 366, 198 S.W.2d 74, 77 (1946)(city not estopped from collecting taxes); *City of San Angelo v. Deutsch*, 126 Tex. 532, 91 S.W.2d 308-09 (1936)(city not estopped from asserting a tax lien). The Supreme Court explained in *Super Wash* that the bases for the rule are that the interest of the individual must at times yield to the public interest, and the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents. *Super Wash*, 198 S.W.3d at 773. A municipality may be estopped, however, in those cases where justice requires its application and there is no interference with the exercise of its governmental functions. *Id.*, *citing City of Hutchins*, 450 S.W.2d at 836. This exception has been found to apply where the municipal officials affirmatively misled the party seeking to estop the municipality and the misleading statements resulted in the permanent loss of claims against the municipality. *See Roberts v. Haltom City,* 543 S.W.2d 75, 80 (Tex. 1976)(holding that a city could be estopped from enforcing a law against a party that required a party bring suit against the city to file a notice of claim within thirty days of injury where there is evidence that city officials may have affirmatively misled the party seeking to estop the city and that the misleading statements resulted in the permanent loss of the party's claims against the city). Evidence showing city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party weighs in favor of applying the exception. *Super Wash*, 198 S.W.3d at 775, *citing e.g., City of Austin v. Garza*, 124 S.W.3d 867, 875 (Tex.App.--Austin 2003, no pet.)(where city received a direct donation of land in exchange for land subject to an erroneous plat note, the city could be estopped from later denying the validity of the plat note).

High Ridge responds that it is not required to plead or offer evidence pertaining to the justice requires exception, and further, the City's argument cannot be raised or considered in a plea to the jurisdiction. High Ridge sued the City for breach of contract based on the City's refusal to pay High Ridge for work performed under work orders issued by Robert Veliz and Ed Gonzalez. The City has taken the position that the work was extra-contractual because it is in excess of the contractual cap of $600,000 and neither Veliz nor Gonzalez had the authority to issue work orders beyond the contractual cap or to amend the contract. High Ridge alleges in its second amended petition that the City should be estopped from denying the authority of Robert Veliz and Ed Gonzalez in providing work orders to High Ridge pursuant to the weatherization contract. Thus, High Ridge is not seeking to estop the City from exercising a governmental function. *Compare Super Wash*, 198 S.W.3d 770 (where car wash owner brought action against city to challenge the validity and enforceability of a zoning ordinance which placed conditions on the use of the owner's property, and alternatively, argued that city should be estopped from enforcing the ordinance, the car wash owner was required to establish that justice required estoppel and estoppel would not interfere with the city's exercise of a governmental function). High Ridge is instead seeking to foreclose a defensive issue raised by the City in response to High Ridge's breach of contract claim. The City does not cite and we have not found any cases holding that a plaintiff must establish the justice requires exception in these circumstances. Issues Six and Seven are overruled.

**OPPORTUNITY TO REPLEAD**

In Issue Eight, the City asserts that High Ridge should not be afforded an opportunity to amend its pleadings because it is impossible for High Ridge to cure the pleading deficiencies identified in the City's plea to the jurisdiction and raised on appeal. The Supreme Court held in

*Miranda* that if the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27; *see City of El Paso v. Collins*, --- S.W.3d ----, 2013 WL 6665090, at *6 (Tex.App.--El Paso 2013, no pet.). We sustained Issue One, but have concluded that the pleadings do not affirmatively establish that there are incurable defects in jurisdiction. Thus, High Ridge must be given an opportunity to amend its pleadings with respect to the breach of contract claim. We sustained Issue Five and concluded that the pleadings and jurisdictional evidence affirmatively demonstrate that the City retains its immunity from suit for the unconstitutional takings claim. In these circumstances, dismissal of the unconstitutional takings claim is appropriate. Issue Eight is therefore sustained in part and overruled in part.

Having sustained Issue One, but having overruled Issue Eight in part, we reverse the trial court's order denying the plea to the jurisdiction as it applies to High Ridge's breach of contract claim and remand the cause to the trial court to allow High Ridge an opportunity to amend their pleadings to cure the jurisdictional defects identified in the opinion. Having sustained Issue Five, but having sustained Issue Eight in part, we reverse the trial court's order denying the plea to the jurisdiction as it applies to High Ridge's unconstitutional takings claim and render judgment dismissing that claim. Having overruled the remaining issues, we affirm the trial court's order denying the plea to the jurisdiction as it applies to High Ridge's estoppel claim.


July 31, 2014

                                    YVONNE T. RODRIGUEZ, Justice

Before Rodriguez, J., Barajas, C.J., and Chew, C.J. (Senior Judges)
Chew, C.J. (Senior Judge), sitting by assignment (concurring opinion), joined by Barajas, C.J. (Senior Judge), sitting by assignment