In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00198-CV
_____

SOUTH EAST TEXAS
REGIONAL PLANNING COMMISSION, Appellant

V.

BYRDSON SERVICES, LLC,
D/B/A EXCELLO CONSTRUCTION, LLC, Appellee

_____

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-194,446
_____

OPINION

In this interlocutory appeal, we are asked to review the trial court's decision denying the South East Texas Regional Planning Commission's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2014) (authorizing appeals from interlocutory orders deciding pleas to the

jurisdiction).[1] After reviewing the relevant evidence and the pleadings, we hold the trial court should have granted the Planning Commission's plea. We reverse the trial court's order, and we render judgment in the Planning Commission's favor, ordering that it be dismissed from the suit.

Background

In 2013, Byrdson Services, LLC sued several defendants, including the Planning Commission, alleging that the defendants had breached various contracts that involved the repair of homes damaged in Hurricane Ike.[2] The homes were repaired through a program funded by the federal government and administered by the States. In its suit, Byrdson claimed that the Planning Commission had not paid it for some of the work it completed, that the Planning Commission had wrongfully refused to allow it to complete its work, and that the Planning Commission had failed to timely pay Byrdson for its work after having been sent its final invoice. Because Byrdson knew that governmental entities such as planning commissions are generally immune from suits for damages in the absence of a statute waiving the entity's right to governmental immunity, Byrdson also alleged in its pleadings

---

[1]Because the subsequent amendments do not affect the outcome of this appeal, we cite the current statute that authorizes the Planning Commission's appeal.

[2]Hurricane Ike made landfall on Galveston Island on September 13, 2008. *City of Houston v. Carlson*, 393 S.W.3d 350, 359 n.7 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

that the Legislature had waived the Planning Commission's immunity for breach of contract claims in section 271.152 of the Texas Local Government Code. Tex. Loc. Gov't Code Ann. § 271.152 (West 2005).

In addition to its breach of contract claims, Byrdson's live pleading alleges that the Planning Commission violated the Prompt Pay Act under Chapter 2251 of the Government Code. Tex. Gov't Code Ann. §§ 2251.001-.055 (West 2008) (providing payment deadlines for governmental entities). With respect to that claim, Byrdson alleged that the Prompt Pay Act waived the Planning Commission's right to rely on a governmental immunity claim, but Byrdson's petition was not specific about which section within Chapter 2251 provided the waiver that allowed the trial court to exercise jurisdiction over the Planning Commission on Byrdson's Prompt Pay Act claim.

In response to Byrdson's suit, the Planning Commission filed a plea to the jurisdiction. In a timely filed amended plea, the Planning Commission asserted that the trial court did not have jurisdiction over Byrdson's claims. According to the Planning Commission's plea, it was not a party to the various contracts at issue, as those contracts were between Byrdson and the various homeowners that Byrdson had sued. Additionally, the Planning Commission asserted that Byrdson's contracts did not require Byrdson to provide goods and services to the Planning

3

Commission, and it claimed that the Legislature had not waived its right to governmental immunity with respect to Byrdson's Prompt Pay Act claim.

Following a hearing on the Planning Commission's plea, the trial court concluded that the Planning Commission was not immune from the claims Byrdson was making in its suit and denied the Planning Commission's plea. On appeal, the Planning Commission challenges the trial court's ruling on its plea. Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (a)(8) (authorizing an interlocutory appeal from a trial court's ruling to grant or deny a governmental unit's plea challenging the trial court's jurisdiction).

Standard of Review

Whether a court has subject-matter jurisdiction over a dispute that involves a governmental agency is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). On appeal, courts use a *de novo* standard in determining whether the plaintiff's pleadings allege sufficient facts to demonstrate that a trial court has jurisdiction over the controversy. *Id.* In reviewing the pleadings, courts are not to weigh whether the plaintiff's claims have merit; instead, courts must decide whether the pleadings and the evidence before the trial court demonstrate that the court may exercise jurisdiction over the parties' dispute. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

4

In reviewing whether the pleadings demonstrate that the trial court has jurisdiction over the subject of the dispute, the plaintiff's pleadings must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). When the plea "challenges the existence of jurisdictional facts," the relevant evidence submitted by the parties is considered, when necessary, in resolving the defendant's challenge. *Miranda*, 133 S.W.3d at 227. In this appeal, the dispute concerns whether Byrdson's pleadings and the evidence demonstrate that the Legislature waived the Planning Commission's immunity regarding Byrdson's breach of contract and Prompt Pay Act claims.

The various contracts, all of which were before the trial court at the time of the hearing on the plea, involve different homes and homeowners. However, all of the contracts contain the same language with respect to Byrdson's obligations to provide goods and services, and all of the contracts contain the same language with respect to Byrdson's and the Planning Commission's obligations. The parties have not asserted that any of the agreements before the trial court are ambiguous; therefore, the question of how the language in the various contracts should be interpreted presents a question of law that can be properly decided by a court without a jury. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). In an appeal, disputes that concern the proper interpretation

of unambiguous written agreements are reviewed using a *de novo* standard. *See id*. at 650-51.

Analysis

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). As political subdivisions of the State, and unless their immunity has been expressly waived, regional planning commissions are generally immune from suit. Tex. Loc. Gov't Code Ann. § 391.003(c) (West 2005). A governmental unit, like a water control and improvement district or a regional planning commission, is generally immune from suit unless its immunity was waived by the Legislature. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010) (noting that water control and improvement districts are political subdivisions of the State); *N. Cent. Tex. Council of Gov'ts v. MRSW Mgmt., LLC*, 405 S.W.3d 364, 368 (Tex. App.—Austin 2013, pet. denied) (explaining that regional planning commissions are political subdivisions of the State).

"Governmental immunity includes both immunity from liability, 'which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.'" *Lubbock Cnty. Water Control & Improvement Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014)

6

(quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)). Here, the parties do not dispute that the Planning Commission is a governmental entity; instead, the dispute concerns whether the Legislature waived the immunity of regional planning commissions for the claims asserted in Byrdson's Fourth Amended Petition.

In 2005, the Legislature enacted a statute waiving the governmental immunity of local governmental entities, like planning commissions, regarding some claims arising from contracts involving goods and services. *See* Tex. Loc. Gov't Code Ann. § 271.152. The scope of the waiver created by the Legislature for breach of contract claims is described in section 271.151(2). *See id*. § 271.151(2) (West Supp. 2014);[3] *and see* § 271.152. In other words, the waiver is limited, not limitless. Consequently, the jurisdictional evidence must establish that the claims arising from the contract at issue fall within the definition of the waiver found in section 271.151(2) of the Local Government Code.

The waiver described in Chapter 271 requires: "(A)  a written contract stating the essential terms of the agreement for providing goods or services to the

---

[3]Although the contracts at issue were executed prior to the date the Legislature amended section 271.151, we cite the current version because the 2013 amendments to section 271.151 are not material to the issues before us in the appeal. *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 1, sec. 271.151(2), 2005 Tex. Gen. Laws 1548, 1548 (current version at Tex. Loc. Gov't Code Ann. § 271.151 (West Supp. 2014)).

local governmental entity that is properly executed on behalf of the local governmental entity[.]" *Id.* § 271.151(2)(A) (defining "'Contract subject to this subchapter'" in relation to section 271.152's waiver of immunity). Several of the requirements of Chapter 271 needed to demonstrate the waiver applies are not disputed in this appeal. The agreements at issue are in writing, and the Planning Commission does not dispute that it was authorized to execute them.[4] The parties also do not dispute that the written contracts contain all of the essential terms of the parties' agreements.[5]

However, the Planning Commission disputes whether it was a party to the respective contracts at issue. It also disputes whether the contracts obligated

---

[4]In light of our disposition of the appeal, it is not necessary that we decide whether the Planning Commission was authorized to enter into the agreements at issue. *Cf. N. Cent. Tex. Council of Gov'ts v. MRSW Mgmt., LLC*, 405 S.W.3d 364, 369 (Tex. App.—Austin 2013, pet. denied) (holding that the contract at issue was authorized by a provision in section 791.025 of the Texas Government Code).

[5]We note that the contract documents before us are incomplete, as they do not contain one of the attachments that is referenced by the agreements. The respective agreements reference five attachments, and the language in the agreements indicates that the attachments were intended to be a part of the agreements. One of those attachments, Attachment E (identified as a contract with the Texas Department of Housing and Community Affairs) was not attached to the Planning Commission's plea or to Byrdson's response, so that part of the agreement is not before us. Therefore, in resolving the issues in the appeal, we have not considered the language in Attachment E to the contract because it was not before the trial court. Additionally, none of the parties has claimed that Attachment E is relevant to resolving the questions that have been presented in the appeal.

8

Byrdson to provide the Planning Commission with goods or services. With respect to its argument that it was not a party to the contracts, the Planning Commission relies on the following provision found in each of the contracts:

> PARTIES TO CONTRACT: The Home Owner and Contractor agree that they are the sole parties to this Contract and are solely responsible for its performance. The parties agree that the Contract Administrator [the Planning Commission] does not assume any liability or responsibility whatsoever for the performance of any term of this Contract.

Despite this language, Byrdson contends that the Planning Commission was a party to the respective contracts. Byrdson points to other language in the agreements to support its position. For example, Byrdson points to language in the agreements stating that the

> contract is between: [the Planning Commission] . . . (referred to in this Contract as the "Contract Administrator"), and [Byrdson] . . . (referred to in this Contract as the "Contractor") warranting itself to be licensed and qualified to perform the work specified herein, and [the individual on whose home the repairs were to be performed] (referred to in this Contract as the "Home Owner").

Byrdson also points to provisions in the agreements that allowed the Planning Commission to select the contractor to repair the homes and to negotiate the amounts of the respective contracts. And, Byrdson notes that under the agreements, the contracts were not effective until they were signed by an appropriate executive from the Planning Commission. Finally, Byrdson points to language in the contracts indicating that the Planning Commission was obligated to pay for

9

Byrdson's work when it was completed and approved, language stating that all of the parties "accept[ed] all above terms, conditions and/or provisions[,]" and the requirement in the agreements indicating that the agreements required the signature of the Planning Commission's executive director to be effective.

First, we consider whether the trial court properly construed the contracts in rejecting the Planning Commission's claim that it was not a party to the agreements. Although the Planning Commission points to one of the provisions in the agreements to support its argument, we note that we are required to construe the individual contract with each homeowner as a whole. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Id*. "To achieve this objective, courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id*. "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id*.

When the individual contract with each homeowner is construed as a whole, it is apparent that each contract creates mutual obligations beneficial to the Planning Commission, to Byrdson, and to the homeowners. The Planning

10

Commission's executive director signed the agreements on behalf of the Planning Commission, and his signature indicates the Planning Commission agreed to the terms of each of the agreements at issue. In construing the "sole parties" provision in light of the entire agreement, we cannot ignore that other provisions in the contracts authorized the Planning Commission to monitor Byrdson's progress and to issue payments, required that Byrdson provide proof of insurance to the Planning Commission before performing its work, prevented the assignment of the work to others without the Planning Commission's approval, prohibited Byrdson from changing the scope of the work being done on a home without the Planning Commission's written authorization, obligated Byrdson to indemnify the Planning Commission from the claims of others, and gave the Planning Commission the right to terminate the contracts if Byrdson failed to properly perform its obligations.

After examining the individual agreement with each homeowner as a whole, we conclude that the contracts create mutual obligations and duties, binding on all of the parties that signed them. Therefore, we reject the Planning Commission's argument that Byrdson and the homeowners were the sole parties to the contracts. We conclude the trial court properly interpreted the agreements by rejecting the Planning Commission's argument that it should look solely to the provision relied

on by the Planning Commission in determining whether the Planning Commission was a party to the agreements.

Nevertheless, we must avoid rendering the "PARTIES TO CONTRACT" provision meaningless if possible. *See id*. With respect to the "PARTIES TO CONTRACT" provision, we must determine the true intentions of the parties by examining the parties' intentions as they are expressed in the written agreement. *See R. & P. Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). In giving the provision meaning, we look to the entire language of the agreement, and we must harmonize the "PARTIES TO CONTRACT" provision with the other terms in the contract. *See Universal C. I. T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). In harmonizing the meaning of the provision, we do not consider one of the provisions in the contract in isolation; instead, we consider each provision relative to the agreement as a whole. *See Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962); *Citizens Nat'l Bank in Abilene v. Tex. & Pac. Ry. Co.*, 150 S.W.2d 1003, 1006 (Tex. 1941).

Under the contracts, private homes damaged in a natural disaster were to be repaired using public money from a limited public fund. Consequently, the various contracts subjected the contractors to oversight by the governmental entity that was tasked with disbursing the funds for the repairs that the contractors agreed in the

12

agreements to perform. To minimize waste, the contracts also required that the contractors performing work meet standards for quality, as established by the agreements. Nonetheless, as a practical matter, the goods and services that Byrdson was to provide under the contracts was to go to the homeowners, as the contracts did not contemplate that the repairs were to be done on structures owned by the Planning Commission.

Other provisions in the contracts also recognized that Byrdson's work would be performed on private homes. For example, the "PARTIES TO CONTRACT" provision states that the homeowner and Byrdson were "solely responsible for [the contract's] performance." And, another provision found in the respective agreements states that the parties did not intend the contract's provisions to constitute a waiver by the Planning Commission of its immunity from suit. These provisions reinforce our conclusion that the contracts contemplated that Byrdson's goods and services were not intended to be provided to the Planning Commission.

The agreements also make clear that the Planning Commission did not by signing the agreements obligate itself to complete any of Byrdson's work, should Byrdson fail to complete the contracts. For example, the respective contracts expressly provide that the Planning Commission was not required under the agreements to repair or complete repairs to the homes. Additionally, the contracts make it clear that the Planning Commission was not obligated to complete the

project or pay for work should the funds for the project be terminated or withdrawn. After considering the respective contract with each homeowner in its entirety, we conclude the goods and services called for by the contracts were goods and services that Byrdson was required to provide to the respective individual homeowners that signed the agreements and that the goods and services Byrdson provided were not provided to the Planning Commission.

Nevertheless, Byrdson contends that even if the repairs that it provided were not provided to the Planning Commission, it was required by the agreements to provide other goods and services to the Planning Commission. According to Byrdson, "*any* service to the governmental entity, even if that service is not the primary purpose of the contract," results in a waiver of the governmental unit's immunity from suit "for the entire contract."

The other goods and services that Byrdson contends it provided to the Planning Commission were to qualify and hire subcontractors, to indemnify the Planning Commission from any potential third-party claims, to warrant its work, and to provide the Planning Commission with performance bonds for its work under the respective contracts. In support of its other services argument, Byrdson relies on a recent opinion of the El Paso Court of Appeals, *City of El Paso v. High Ridge Construction, Inc*., 442 S.W.3d 660 (Tex. App.—El Paso 2014, pet. filed). In *High Ridge*, the El Paso Court addressed a contract that required a contractor to

14

weatherize private homes in a program funded by the federal government and administered by the City of El Paso. *Id*. at 663, 669. After the City refused to pay for the materials and services provided by the contractor to various homeowners, the contractor sued. *Id.* at 664. In its suit against the City, the contractor alleged that section 271.151 of the Local Government Code waived the City's immunity from suit. *Id*.

After it was sued, the City of El Paso filed a plea to the jurisdiction, claiming that it was immune from being sued by the contractor for nonpayment because it was not the recipient of the weatherization services. *Id*. at 664-65, 669. After the trial court denied the City's plea, the City filed an interlocutory appeal. After examining whether High Ridge's claim involved the delivery of goods or services to the City, the El Paso Court explained that "the weatherization services provided by High Ridge to private residential properties did not provide a direct benefit to the City[.]" *Id.* at 669-70. The El Paso Court concluded that the services that High Ridge provided were "not the type of service contemplated by Section 271.152." *Id*. at 670.

However, after rejecting the argument that the weatherization services were provided to the City, the El Paso Court then examined whether other provisions in the contract required that High Ridge provide goods or services to the City, even though those other services had not formed the basis of the claims High Ridge was

15

making in its suit. *Id.* Looking to the indemnity provision in the contract, the El Paso Court observed that High Ridge was required to indemnify the City against claims under the contract if such claims arose "out of High Ridge's activities under the contract." *Id*. Looking to the warranty provision of the contract, the El Paso Court noted that High Ridge was required "to provide a one year warranty to the client and to the City for all weatherization work [that High Ridge] completed." *Id*. Based on the contract's warranty and indemnity provisions, provisions that were not the subject of High Ridge's claimed breach, the El Paso Court concluded: "The warranty and indemnity provisions certainly operate as a direct benefit to the City." *Id*.

In this case, Byrdson did not sue the Planning Commission based on claims that relate to the indemnity and warranty provisions of the contracts. Moreover, we disagree with Byrdson's argument that to show a valid waiver, it was not required to show that the repairs it provided or agreed to provide to the homeowners directly benefitted the Planning Commission. Warranty and indemnity provisions in government contracts are common; through such provisions, a governmental entity attempts to insulate itself, and its taxpayers, from liabilities that might arise from work done by others. Here, the warranty provisions might operate to insulate the Planning Commission from liability for warranty claims, should warranty claims arise in the future. However, nothing in the evidence before the trial court

16

demonstrates that such claims occurred, and Byrdson's suit does not allege that the warranty provisions of the contracts were breached.

The indemnity provisions in the agreements were also not at issue in Byrdson's suit; instead, Byrdson sought to be paid for work it performed and for the profits on the work it would have performed had it been allowed to complete the work required under the contracts. The indemnity provisions of the agreements were intended to protect the Planning Commission from claims by third-parties who might assert claims related to being injured by Byrdson's work, in the event such parties were to pursue claims against the Planning Commission. The indemnity provisions were intended to shift any potential liability the Planning Commission might have for approving or paying for the work to Byrdson. Regardless, no pleadings or evidence were before the trial court to show that third-parties had made claims that triggered the indemnity provisions found in the agreements.

We conclude that the evidence before the trial court did not demonstrate that the warranty and indemnity provisions of the contracts directly benefitted the Planning Commission. In our opinion, on the record before us, the benefits the Planning Commission might enjoy from the warranty and indemnity provisions of the contracts are contingent and indirect. On this record, we hold that Byrdson

failed to show that a direct relationship existed between its claims against the Planning Commission and the indemnity and warranty provisions in the contracts.

Our conclusion that the Legislature did not intend to waive governmental immunity under the circumstances in this case finds support in the Code Construction Act, which we have used in interpreting the scope of section 271.152 of the Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 1.002 (West 2008) (making the Code Construction Act applicable to "the construction of each provision in [the Local Government Code,] except as otherwise expressly provided by this code"). Under the provisions of the Code Construction Act, "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034 (West 2013). Additionally, the Texas Supreme Court has indicated that the waiver in Chapter 271 is a "limited waiver." *See Tooke*, 197 S.W.3d at 329.

We note that Chapter 271 does not include express language waiving immunity for the contingent claims, such as future warranty and indemnity claims that might be made, when such claims do not form the basis of the claims on which Byrdson sued. Had the Legislature intended section 271.152's waiver to be triggered by such contingent claims, and given the language on interpreting the intended scope of the waiver in the Code Construction Act, we are of the opinion that section 271.152 would have clearly and unambiguously spelled out that intent.

18

*See E. Houston Estate Apts., L.L.C. v. City of Houston*, 294 S.W.3d 723, 736 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (noting that the Legislature could have used language in Chapter 271 indicating that it intended to waive governmental immunity for every contract had it chosen to do so).

In this case, the claims Byrdson asserted against the Planning Commission were based on the Planning Commission's failure to pay for services Byrdson provided to the homeowners and for cancelling Byrdson's contracts. Under the contracts, however, the Planning Commission was a conduit of federal funds and a facilitator for the individual projects; it was not the recipient of the work at issue in Byrdson's suit. *See id.* Because the record before the trial court does not support the trial court's conclusion that Byrdson's suit was based on claims under a contract that called for Byrdson to provide goods or services to the Planning Commission, we agree with the Planning Commission that the trial court should have dismissed it from Byrdson's suit because it was immune from the claims asserted in Byrdson's pleadings. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(A).

We also find error in the trial court's resolution of Byrdson's Prompt Pay Act claim. *See* Tex. Gov't Code Ann. §§ 2251.001-.055. In the brief Byrdson filed in response to the Planning Commission's appeal, Byrdson did not advance its argument that Chapter 2251 operated to waive the Planning Commission's right to governmental immunity, and we have held otherwise in another case involving

19

Chapter 2251. *See Port Neches-Groves Independent School District v. Pyramid Constructors, L.L.P.,* 281 S.W.3d 142, 147 (Tex. App.—Beaumont 2009, pet. denied). In rejecting the claim that Chapter 2251 waived the school district's immunity on similar facts, we held that "Chapter 2251 does not waive governmental immunity for resolving a disputed payment." *Id*. Consistent with our holding in *Pyramid*, we conclude that the evidence and pleadings before the trial court fail to demonstrate that the trial court had jurisdiction over Byrdson's Prompt Pay Act claim. *Id*. We hold the trial court erred in failing to dismiss the Prompt Pay Act Claim Byrdson filed against the Planning Commission.

## Conclusion

When reversing a trial court's decision, we are required to render the judgment the trial court should have rendered. Tex. R. App. P. 43.3. We hold the trial court did not have jurisdiction over the claims that Byrdson asserted in its Fourth Amended Petition against the Planning Commission. We reverse the trial court's order denying the Planning Commission's plea, and we render judgment dismissing the Planning Commission from the case, trial court cause number B-194,446.

REVERSED AND ORDER OF DISMISSAL RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on September 25, 2014
Opinion Delivered January 22, 2015

Before McKeithen, C.J., Kreger and Horton, JJ.

21