**TELEDYNE MOVIBLE OFFSHORE, INC., Appellant,**

v.

**LEASCO FLEETING & BARGE SERVICE, INC., Appellee.**

**No. 09–91–161 CV.**

Court of Appeals of Texas,
Beaumont.

April 9, 1992.

Rehearing Denied April 30, 1992.

Mark Freeman, Perry Neichoy, Wells, Peyton, Beard, Greenberg, Hunt & Crawford–Beaumont, for appellant.

Richard E. Griffin, Hirsch, Glover, Robinson & Sheiness, David Plavnicky, Steven E. Goodson, Lea, Plavnicky & Moseley, Houston, for appellee.

Before WALKER, C.J., and BURGESS and WHITHAM,[1] JJ.

## OPINION

WALKER, Chief Justice.

On December 22, 1988, Charles Salas was allegedly injured while working as a rigger on a large derrick barge known as the Movible DB–2 in offshore Texas waters. Leasco Fleeting & Barge Service, Inc., (Leasco) appellee herein, as a labor supplier, had provided Salas to Teledyne Movible Offshore, Inc., (TMO) appellant herein. TMO is the owner of the Movible DB–2, (DB–2). A master service contract between TMO and Leasco was triggered by the execution of a work order on November 30, 1988. The master service contract contains an indemnity provision in which Leasco agrees to defend and indemnify TMO for any liability for injuries occurring to employees of Leasco, i.e., Salas.

Salas brought an action against TMO for damages resulting from injuries allegedly received on December 22, 1988. TMO then sued Leasco, as a third party, claiming rights of indemnity under the master service contract. Leasco moved for summary judgment against TMO on grounds that the contract in question was subject to interpretation by Louisiana law, the contract being nonmaritime in nature. TMO also moved for summary judgment urging the trial court to find that the master service contract was essentially maritime in nature, thereby defining the rights and obligations of the parties under general maritime law. The trial court granted Leasco's motion for summary judgment and denied TMO's cross-motion for summary judgment. The trial court applied Louisiana law and held that TMO was not entitled to a defense nor indemnity from Leasco. TMO moved to sever its third party action from the Salas action against TMO, then brought a direct action against Leasco. The trial court granted TMO's motion to sever and entered judgment on the severed action.

During the pendency of the third party action, Leasco filed for protection from creditors under U.S. BANKR.CODE ch. 11. The United States Bankruptcy Court of the Western District of Louisiana has lifted the automatic stay permitting this Court to proceed with this appeal.

The DB–2 is a documented vessel of the United States owned by TMO and was engaged in navigation at the time of Salas' alleged injury. On the date in question, the DB–2 was afloat in international waters of the Gulf of Mexico, over the Outer Continental Shelf in the High Island area, approximately 30 nautical miles off the coast and on the Texas side of the imaginary Louisiana–Texas boundary, extending into the Gulf of Mexico. Salas was an employee of Leasco and one of two riggers provided pursuant to the work order in question. The mission of the vessel DB–2 was to facilitate lifting operations in conjunction with work to be performed on various offshore drilling rigs. Salas' duties were principally to attach loads to a crane and detach loads after they had been moved or positioned. Salas alleges that he was injured while performing his rigging duties.

The issue before this Court is whether the trial court improperly applied Louisiana law rather than general maritime law to the master service contract. In holding that the trial court erred in its application of law, we are mindful that the learned trial judge was without benefit of those guidelines for construing such contracts subsequently set forth in *Davis & Sons, Inc. v. Gulf Oil Corporation*, 919 F.2d 313 (5th Cir.1990).

Historically, the law has been complex in this area, but *Davis*, particularly as to our facts, leads us to conclude that the contract between appellant and appellee was indeed maritime in nature.

*Davis* provides that we consider the following six factors in characterizing our contract:

1.) What does the specific work order in effect at the time of the injury provide?

---

1. Honorable Warren Whitham, retired, Fifth Court of Appeals at Dallas, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2.) What work did the crew, assigned under the work order, actually do? 3.) Was the crew assigned to work aboard a vessel in navigable waters? 4.) To what extent did the work being done relate to the mission of that vessel? 5.) What was the principal work of the injured worker? 6.) What work was the injured worker actually doing at the time of the injury? *Davis,* 919 F.2d 313 at 316.

Question one inquires into the provisions of the specific work order dated November 30, 1988. TMO requested Leasco to provide two riggers to work on the DB-2.

Question two examines the type of work to be performed under the work order. There is no indication in the record that Salas was performing any other work than that which was assigned to him. This conforms to the work order, that is, being a rigger and performing rigging duties at the time of his alleged injury. Appellee relies on the case of *Hollier v. Union Texas Petroleum Corp.,* 765 F.Supp. 330 (W.D.La.1991) which stands for the proposition that the work of an operator, performing operator/roustabout services for various offshore production platforms, was not inherently maritime in nature. Although the work contributed to the *function* of the vessel, the *Hollier* case holds that it did not contribute to the *operation* of the vessel and therefore, did not contribute to the mission of the vessel nor convert the nature of his employment to maritime work. We do not believe this holding to be controlling in the instant case.

We also hold that the case of *Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393 (5th Cir.), *reh'g denied* 940 F.2d 117 (1991) is distinguishable from the case at bar and does not apply.

Question three is whether Salas was assigned to work aboard a vessel in navigable waters. Clearly the DB-2 was a vessel engaged in navigation on navigable waters 30 miles offshore from the Texas coastline at the time of the alleged injury.

Question four requires that we examine the relationship of the work being performed by Salas to the mission of the vessel DB-2. The DB-2 is an 800 ton maximum lift, floating derrick barge, and this vessel cannot operate or perform its mission without individuals to rig the slings and cables and to assist with the hoisting operations. The primary function of the vessel was that of a work platform. Salas was working as a rigger on the vessel as it performed its mission in carrying out hoisting operations. It is not necessary to the holding of the Court that Salas participated in navigating or maintaining the vessel. *See Davis, supra,* at 317.

Questions five and six are answered by the fact that the principal work being done by Salas and the work assigned to him through the work order at the time of the alleged injury are the same.

We hold, therefore, that the master service agreement viewed along with the work order of November 30, 1988, as applied to the facts of the case, constitutes a maritime contract and the validity of the indemnity provision of the master service contract between TMO and Leasco must be determined according to maritime law.

We reverse the trial court's granting of summary judgment in favor of Leasco and the denial of TMO's cross-motion for summary judgment. Judgment is therefore rendered in favor of TMO and against Leasco.

REVERSED AND RENDERED.