# IN THE SUPREME COURT OF TEXAS

══════════
No. 15-0158
══════════

BYRDSON SERVICES, LLC, D/B/A EXCELLO CONSTRUCTION, LLC, PETITIONER,

v.

SOUTH EAST TEXAS REGIONAL PLANNING COMMISSION, RESPONDENT

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE NINTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued October 3, 2016**

JUSTICE WILLETT delivered the opinion of the Court.

Following Hurricane Ike, federally funded rebuilding projects in disaster-stricken areas of Texas were overseen by various local governmental entities. This is a contract dispute between one of those entities and a construction contractor. The sole issue is one of governmental immunity: Does the contractor's suit fall within chapter 271 of the Local Government Code, which waives immunity if the contract, among other things, provides "goods or services to the local governmental entity"?

We answer yes: The statutory-immunity waiver applies. Texas homeowners were *primary* beneficiaries under the recovery-and-rehabilitation program, but they were not the *only* beneficiaries. The contract also benefitted the local governmental entity—directly so—providing rebuilding work the entity was obligated to provide itself. Accordingly, the chapter 271 immunity waiver applies.

We reverse the court of appeals' judgment.

## I. Factual and Procedural Background

In response to destruction caused by Hurricane Ike in 2008, the federal government block-granted disaster-relief funds to the states. Texas, through its Department of Housing and Community Affairs, distributed its share of federal funding to various local governmental entities including the South East Texas Regional Planning Commission (Planning Commission or Commission). The Commission is one of several regional planning commissions created under chapter 391 of the Local Government Code, generally charged with making "studies and plans to guide the unified, far-reaching development of a region."[1] Services provided by the Commission include administration and management of disaster-recovery programs following natural disasters.

Under a contract between the State and the Planning Commission, the State provided $95 million to the Commission for various disaster-relief and housing-restoration services.[2] Under this contract, the Planning Commission committed to provide homeowner-repair services to area households.

The contract authorized the Planning Commission to subcontract the repair work and it entered into five contracts with Byrdson Services, LLC. A dispute arose between the Commission and Byrdson regarding the quality of Byrdson's work and payment due under the contracts. Byrdson sued the Commission for payments allegedly due.

---

[1] TEX. LOC. GOV'T CODE § 391.001(b). Regional planning commissions may "contract for . . . funds from . . . the state." *Id.* § 391.011(c).

[2] The State later transferred disaster-relief services from its Department of Housing and Community Affairs to its General Land Office, and the contract was transferred to the General Land Office. This transfer has no bearing on this dispute. For ease of reference we refer to this contract as the contract with the State.

The Planning Commission filed a plea to the jurisdiction, alleging governmental immunity from suit. Byrdson countered that immunity had been waived by chapter 271 of the Local Government Code. The trial court denied the plea.

On interlocutory appeal,[3] the court of appeals reversed, holding that governmental immunity had not been waived.[4]

## II. Discussion

When evidence is presented with a plea to the jurisdiction, the trial court may rule on the plea as a matter of law if the evidence does not raise a fact issue on the jurisdictional question.[5] The dispositive evidence here is undisputed. We review de novo the trial court's jurisdictional determination.[6]

Political subdivisions of the State, including entities like the Planning Commission, possess governmental immunity from suit unless the Legislature has waived that immunity.[7] Moreover, we require that statutory-immunity waivers be expressed in "clear and unambiguous language."[8]

---

[3] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

[4] 454 S.W.3d 581.

[5] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

[6] *City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011). We conclude that we have jurisdiction over this interlocutory appeal because, as discussed below, the court of appeals' decision conflicts with decisions of our Court and another court of appeals, giving us conflicts jurisdiction. *See id.* (discussing conflicts jurisdiction over interlocutory appeals under TEX. GOV'T CODE §§ 22.001(a)(2) and 22.225(c)).

[7] *Id.* at 134.

[8] *Tooke v. City of Mexia*, 197 S.W.3d 323, 328–29 (Tex. 2006).

3

The Legislature has waived governmental immunity as to certain contract claims. Local Government Code section 271.152 provides:

> A local governmental entity that is authorized by statute to enter into a contract and that enters into a contract subject to this subchapter waives immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.[9]

Section 271.151(2)(A) provides that a "[c]ontract subject to this subchapter" means

> a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.][10]

The Planning Commission contends chapter 271 does not apply to this dispute, because its contracts with Byrdson do not state essential terms "for providing goods or services to the local governmental entity." Citizens benefitted, not the Commission.

In the past decade, we have decided several cases examining this very point—whether agreements provided goods or services to a local governmental entity: *Ben Bolt-Palito Consolidated Independent School District v. Texas Political Subdivisions Property/Casualty Joint Self-Insurance Fund*;[11] *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*;[12] *City of Houston v. Williams*;[13] and *Lubbock County Water Control and Improvement District v. Church & Akin, L.L.C.*[14]

---

[9] TEX. LOC. GOV'T CODE § 271.152.

[10] *Id.* § 271.151(2)(A).

[11] 212 S.W.3d 320 (Tex. 2006).

[12] 320 S.W.3d 829 (Tex. 2010).

[13] 353 S.W.3d 128 (Tex. 2011).

[14] 442 S.W.3d 297 (Tex. 2014).

In *Kirby Lake*, we explained that the term "services" in chapter 271 "is broad enough to encompass a wide array of activities," and "includes generally any act performed for the benefit of another."[15] The agreement to provide services to the governmental unit "need not be the primary purpose of the agreement."[16] However, section 271 does not extend to "contracts in which the benefit that the local governmental entity would receive is an indirect, attenuated one."[17]

We hold the agreements Byrdson made with the Planning Commission do in fact provide services to the Commission and are thus covered by chapter 271's immunity waiver.

Byrdson argues that warranty and indemnity provisions in the contracts provide the requisite services to the Planning Commission. These provisions require Byrdson to warrant its work to the homeowner and to hold the Planning Commission harmless against third-party claims by reason of Byrdson's work under the contracts. Byrdson points us to a case with similar facts, where the City of El Paso received a block grant to provide weatherization services to homeowners, and then contracted with private companies to provide the services. The court of appeals noted provisions in the contract between a private contractor, High Ridge, and the City, requiring High Ridge "to provide a one year warranty to the client" and "to indemnify and defend the City from any causes of action and claims arising out of High Ridge's activities under the contract."[18] The court held the warranty

---

[15] *Kirby Lake*, 320 S.W.3d at 839 (quoting *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)); *accord Williams*, 353 S.W.3d at 139; *Church & Akin*, 442 S.W.3d at 302–03.

[16] *Kirby Lake*, 320 S.W.3d at 839; *Church & Akin*, 442 S.W.3d at 302.

[17] *Kirby Lake*, 320 S.W.3d at 839 (quoting *Berkman v. City of Keene*, 311 S.W.3d 523, 527 (Tex. App.—Waco 2009, no pet.) (brackets omitted)); *Church & Akin*, 442 S.W.3d at 303.

[18] *City of El Paso v. High Ridge Constr., Inc.*, 442 S.W.3d 660, 670 (Tex. App.—El Paso 2014, pet. denied).

5

and indemnity provisions directly benefitted the City and provided services under chapter 271.[19] In contrast, in today's case the court of appeals held the warranty and indemnity provisions were too "contingent and indirect" to qualify as the provision of services to the Planning Commission under chapter 271.[20]

We do not decide whether the warranty and indemnity provisions, standing alone, would qualify as the provision of services to the Planning Commission for purposes of chapter 271. This result would be somewhat odd, in that contractual provisions intended to shield the Commission from liability would have the effect of waiving immunity, the purpose of which is to protect the public treasury from liability claims.[21]

But we need not dwell on this conundrum. We conclude the Byrdson agreements provided services to the Planning Commission under chapter 271 because Byrdson performed services the Planning Commission was otherwise obligated to perform itself under its contract with the State. The contract between the State and the Planning Commission provided funds to the Commission, and obligated it to provide "owner homeowner repair, reconstruction, and new construction activities . . . demolition activities . . . and single and multi-family rental rehabilitation, reconstruction and new construction activities" to households in its region. Among other obligations, the Commission was required to "provide homeowner repair, rehabilitation, reconstruction, new construction, and

---

[19] *Id.*

[20] 454 S.W.3d at 590.

[21] *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) (recognizing that in modern times governments have retained sovereign immunity "to protect the public treasury"); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) (stating an important purpose of sovereign immunity, as "applied to the various governmental entities," is "to shield the public from the costs and consequences of improvident actions of their governments").

elevation assistance to a minimum of" 567 households. The contract provided that the Commission "will provide" these services, but "may subcontract for performances described in this Contract."[22] The Commission subcontracted with Byrdson, and thereby relieved itself of contractual obligations it had under its contract with the State. For this reason the Byrdson agreements provided real and direct services to the Planning Commission that bring the agreements within chapter 271.

We reached a similar result in *Kirby Lake*, our most analogous recent case. In *Kirby Lake*, developers built water and sewer facilities for the Clear Lake Water Authority. Under agreements with the water authority, the developers leased the facilities to the authority, and it agreed to later purchase the facilities if a bond issue was approved.[23] The authority could have built the facilities itself, since the Act creating the water authority directed it to develop just such facilities.[24] The Act, not unlike the contract here between the Planning Commission and the State, authorized the water

---

[22] The Commission states that its contract with the State was "inadvertently omitted from the record," but attaches the contract to its brief. The authenticity of the attachment is undisputed and we take judicial notice of this contract.

[23] 320 S.W.3d at 832–33.

[24] The Act states:

> [T]he Authority is specifically granted the right, power and authority to purchase and construct . . . waterworks systems, sanitary sewer systems, storm sewer systems and drainage facilities . . . and to operate and maintain same, and to sell water or other services . . . and the Authority may exercise any of the rights, powers and authorities granted by this Act within or without the boundaries of the Authority . . . .

Act of April 18, 1963, 58th Leg., R.S., ch. 101, § 7, 1963 Tex. Gen. Laws 164, 174.

authority to contract with private parties to construct the facilities the authority otherwise would construct itself.[25]

The Planning Commission argues the homeowners and not the Commission were the real beneficiaries of the Byrdson contracts, since the homeowners received the benefits of the reconstruction services. But in *Kirby Lake*, too, homeowners and not the governmental entity were arguably the ultimate beneficiaries of the developers' efforts to build water and sewer facilities. This circumstance did not take the contracts outside the scope of chapter 271. We held the agreements provided sufficiently "concrete" services to the water authority to fall under chapter 271, because the developers "contracted to construct, develop, lease, and bear all risk of loss or damage to the facilities."[26] Here, too, the benefit to the Planning Commission—satisfying the Commission's contractual obligations to the State—was sufficiently direct and concrete for the contracts to fall within chapter 271, even if the "primary purpose" of the agreements was to benefit homeowners.[27]

---

[25] The Act provides:

> The Authority shall have the right, power and authority to enter into contracts with . . . developers or lessees of lands and property as may be necessary or appropriate to a continuing and orderly plan of development of such lands and property through the purchase, construction or installation of such facilities, works or improvements as such Authority may be otherwise authorized and empowered to do or perform so that, to the greatest extent reasonably possible . . . all such lands may, under such contracts, be placed in position ultimately to receive the services of such facilities, works or improvements.

*Id*. § 9, 1963 Tex. Gen. Laws at 174.

[26] *Kirby Lake*, 320 S.W.3d at 839.

[27] Similarly, in *Church & Akin*, we held if the plaintiff had not leased the premises at issue but had contractually agreed to operate a marina for the defendant water district, chapter 271 would have waived the water district's immunity, even if the water district's constituents were the ultimate beneficiaries of the marina services. 442 S.W.3d at 303–04 & n.8. *See also id.* at 312 (Willett, J., dissenting) (concluding that contract provided a service to the water district because "Church & Akin took over a function that the District would have otherwise performed").

The Planning Commission argues that *Kirby Lake* is distinguishable because the governmental entity in that case acquired a free lease of the facilities constructed by the developers, while here the services provided by Byrdson were provided to properties owned by private citizens. The Commission contends that in *Kirby Lake* the parties contemplated that the governmental entity would ultimately own the facilities constructed by the developers. This is a factual distinction but not a fateful one. We emphasized in *Kirby Lake* and two later decisions that chapter 271 applies to a wide array of activities, and generally includes any act performed for the benefit of the governmental entity.[28] We have never suggested that the agreements covered by chapter 271 are limited to those where the governmental entity obtains a property interest, nor can such a limitation be gleaned from a plain reading of the statute. The statute is instead written expansively to cover agreements providing services, so long as services are provided "to" the governmental entity.

### III. Conclusion

We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** December 23, 2016

---

[28] *Kirby Lake*, 320 S.W.3d at 839; *accord Williams*, 353 S.W.3d at 139; *Church & Akin*, 442 S.W.3d at 302–03.

9