

# NUMBER 13-21-00045-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

REGIONAL POOL ALLIANCE,
MATAGORDA COUNTY SELF INSURANCE POOL,
AND WEST TEXAS RURAL COUNTIES ASSOCIATION,      Appellants,

v.

NORTHSTAR RECOVERY SERVICES, INC.,                     Appellee.

## On appeal from the 36th District Court
## of Aransas County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

In this contract dispute over disaster recovery and restoration services provided in

the wake of Hurricane Harvey, appellants Regional Pool Alliance (RPA), Matagorda

County Self Insurance Pool (MCSIP), and West Texas Rural Counties Association

(WTRCA) contend that they are immune from the claims of appellee NorthStar Recovery Services, Inc. (NorthStar) because NorthStar failed to establish a waiver of immunity under Chapter 271 of the Texas Local Government Code. Specifically, appellants argue that (1) they are not "local governmental entit[ies]" as that term is defined by Chapter 271, (2) they did not directly benefit from the services NorthStar performed, and (3) Chapter 271 does not waive claims for quantum meruit.[1] We affirm in part and reverse and render in part.

## I. BACKGROUND

### A. The Governmental Parties

Matagorda County "and Special Districts of Matagorda County" entered an interlocal agreement and formed MCSIP as a self-insurance pool. Throckmorton, Shackelford, Motley, Regan, Schleicher, McCulloch, and Foard Counties entered their own interlocal agreement and formed WTRCA as a self-insurance risk pool.

In 2010, MCSIP and WTRCA, as founding members, entered the "Regional Pool Alliance Interlocal Agreement" (Interlocal Agreement) for the purpose of "achiev[ing] efficiencies in the performance of certain governmental functions, including . . . disaster restoration, [and] disaster recovery and other applicable services." The Interlocal Agreement created RPA as "a distinct governmental unit . . . designated as the administrative agency that shall oversee the performance of [the agreement]" under

---

[1] In a parallel mandamus proceeding, under appellate cause number 13-21-00189-CV, appellants raised the alternative argument that rather than governmental entities imbued with immunity from suit, they are non-jural entities without the capacity to be sued. As explained below, we agree with appellants' position in this appeal that they are governmental entities entitled to immunity. Accordingly, on this same day, the Court denied appellants' petition for mandamus relief. *In re Regional Pool Alliance*, No. 13-21-00189-CV, 2022 WL _____, at * __, (Tex. App.—Corpus Christi–Edinburg May 5, 2002, orig. proceeding) (mem. op.).

§ 791.013 of the Texas Government Code. Under the Interlocal Agreement, RPA is obligated to "employ personnel and independent contractors, perform administrative activities, provide administrative services and generally organize the activities contemplated [by the agreement]." The Interlocal Agreement contemplates that "other governmental entities, or associations of governmental entities," may join RPA.

At some point, Aransas County, Aransas County ISD, Taft ISD, and Ingleside ISD (ISDs) joined RPA. The ISDs are located in Aransas County. It is not clear from the record whether these governmental entities joined RPA as individual members or as part of an "association[] of governmental entities."

**B.     The Contract**

In March 2016, NorthStar Group Services, Inc. entered a Master Services Agreement (MSA) with "[RPA] and it's [sic] members . . . to perform the work identified in each Work Order." The MSA includes an attached rate schedule and was executed by RPA's Director, Kathleen Hicks. Approximately a year later, NorthStar was substituted as the contractor under the MSA.

In September 2017, RPA and NorthStar executed a work order whereby "[RPA] or Its Members" requested NorthStar perform a laundry list of disaster recovery and restoration services on "[a]ll buildings impacted by Hurricane Harvey for: Aransas County ISD, Taft ISD, Ingleside ISD, [and] Aransas County Facilities." These services included "[p]rocurement of temporary office spaces" and "[e]xecut[ing] leases on behalf of RPA Members." The work order was again signed by Hicks in her capacity as Director of RPA. The work order included a total of sixty-five separate job numbers, and RPA agreed to

3

pay NorthStar "in accordance with the [MSA]."

## C. The Suit

By the time work was completed, NorthStar had billed RPA roughly $111 million, and RPA had paid NorthStar roughly $89 million but disputed the remainder. NorthStar filed its original petition in June 2020. NorthStar's live pleading alleges claims against each appellant for breach of contract, suit on a sworn account, and quantum meruit. NorthStar also alleges that immunity has been waived for each appellant under Chapter 271 of the Local Government Code. Among the exhibits attached to NorthStar's pleading are copies of the MSA, the rate schedule, and the September 2017 work order.

## D. The Plea to the Jurisdiction

Appellants filed a combined plea to the jurisdiction, arguing, as they do here, that (1) they were not subject to Chapter 271's waiver, (2) even if they were, they did not receive a service under the contract, and (3) NorthStar's quantum meruit claim is outside the scope of Chapter 271's waiver. As supporting evidence, appellants submitted:

- RPA's Interlocal Agreement;

- MCSIP's by-laws;

- WTRCA's interlocal agreement;

- An affidavit from Schleicher County Judge Charlie Bradley;

- An affidavit from Matagorda County Judge Nate McDonald; and

- An affidavit from Aransas County Judge C.H. "Burt" Mills Jr.

The plea was originally set for hearing December 2, 2020.

On November 12, 2020, NorthStar filed a verified motion for a sixty-day

4

continuance on the basis that appellants were not cooperating with NorthStar's jurisdictional discovery requests. The trial court continued the plea hearing until January 13, 2021, but the order does not compel appellants to comply with any of NorthStar's discovery requests.[2]

During the subsequent plea hearing, NorthStar conceded that Chapter 271's waiver "does not allow for a claim for quantum meruit" and informed the trial court that it intended to file a notice of nonsuit after the hearing. NorthStar maintained that the trial court had jurisdiction over its other claims. After taking the matter under advisement, the trial court denied the plea in its entirety, and this interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.     STANDARD OR REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

Sovereign immunity protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims.

---

[2] It is not clear from the record whether the trial court held a hearing on NorthStar's motion for a continuance. If a hearing did occur, we have not been provided a copy of the reporter's record.

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity offers the same protections for political subdivisions of the State, including municipalities and school districts. *Id.* To prevail on a claim of immunity, the governmental defendant "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a defendant challenges the existence of jurisdictional facts, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)). Accordingly, when a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the plea as a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

Absent a legislative waiver, governmental entities are generally immune from breach of contract claims. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) (explaining why the judiciary defers to the Texas Legislature to waive immunity from contract claims). Chapter 271 of the Texas Local Government Code provides a limited waiver of immunity for certain contract claims against a "local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.152. Chapter 271 defines "local governmental entity" as "a political subdivision of this state, other than a county or a unit of state government," and provides a non-exclusive list of examples, including municipalities, public school districts, and special-purpose districts or authorities. *Id.* at § 271.151(3)(A)–(C). The waiver only

6

applies to certain types of contracts, *id.* at § 271.152, including "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* at § 271.151(2)(A).

It is "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (citing *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984); *Bd. of Ins. Comm'rs v. Great So. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951)). "[A] court may determine, as a matter of law, that multiple documents comprise a written contract." *Id.* (citing *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981)). "A master service agreement does not provide for the performance of any specific work or any specific price; instead[,] it requires the issuance of work orders and, upon acceptance of the work orders, they become part of the master service agreement." *Shell W. E & P, Inc. v. Pel-State Bulk Plant, LLC*, 509 S.W.3d 581, 587 (Tex. App.—San Antonio 2016, no pet.) (citing *In re Helix Energy Sols. Grp., Inc.*, 303 S.W.3d 386, 391 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (orig. proceeding); *Teledyne Movible Offshore, Inc. v. Leasco Fleeting & Barge Serv., Inc.*, 827 S.W.2d 633, 634–35 (Tex. App.—Beaumont 1992, writ denied)).

### III. ANALYSIS

It is undisputed that each appellant is itself a governmental entity entitled to governmental immunity. Indeed, as evidenced by the record, each appellant was formed

7

pursuant to the Interlocal Cooperation Act by a group of governmental units for the express purpose of performing certain governmental functions. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324–26 (Tex. 2006) (holding that a governmental self-insurance pool formed under the Interlocal Cooperation Act was a governmental entity entitled to immunity because it performed governmental functions).

## A.   Appellants are Subject to Chapter 271

Rather, by their first issue, appellants contend that they fall outside the scope of Chapter 271 because they are not "local governmental entit[ies]." *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151(3), 271.152. Appellants advance two interrelated arguments in support of their position: (1) appellants do not enjoy a separate existence apart from their members, and (2) because some of their members are counties, and counties are expressly excluded from the definition of "local governmental entity," appellants themselves cannot be "local governmental entit[ies]." *See id.* § 271.151(3). The Supreme Court of Texas has previously rejected these arguments.

In *Ben Bolt*, the supreme court found that a self-insurance pool comprised of "eight counties, six municipalities, forty-three independent school districts, and various special districts and other political subdivisions" was "a discrete governmental unit separate and apart from its members." 212 S.W.3d at 322, 328. The pool derived its immunity "from the performance of governmental functions, not from the immunities of those members that combined to form it." *Id.* at 328. Consequently, the court concluded that the pool was a "local governmental entity" under Chapter 271 even though eight of its members were

8

counties. *Id.* ("The only entities expressly excluded from the statutory waiver are counties and units of state government, and the [pool] itself is neither of these.").

Like *Ben Bolt*, WTRCA and MCSIP are self-insurance pools. *See id.* at 322. Similarly, RPA is a distinct governmental entity formed under the Interlocal Cooperation Act for the purpose of performing governmental functions. *See id.* at 324–25. Because none of these governmental entities is a county or a unit of state government, each one is necessarily a "local governmental entity" for purposes of Chapter 271. *See id.* at 328. Appellants' first issue is overruled.

## B. No Direct Benefit to WTRCA or MCSIP

Appellants next argue that only Aransas County and the ISDs received a direct benefit under the contract. Stated differently, appellants contend that Chapter 271's waiver does not apply to them because they did not receive any services under the contract.

First, we must determine what documents constituted the "written contract stating the essential terms of the agreement for providing . . . services." *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2). Here, the MSA and attached rate schedule do not contain all the essential terms of the agreement; the parties' intent only becomes clear when we consider those documents together with the September 2017 work order. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840; *Shell W. E & P*, 509 S.W.3d at 587. Accordingly, we conclude that the written contract is comprised of the MSA, the attached rate schedule, and the separate work order. *See Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840.

Pursuant to the work order, NorthStar performed a non-exhaustive list of twenty-

eight recovery and restoration services on "[a]ll buildings impacted by Hurricane Harvey for: Aransas County ISD, Taft ISD, Ingleside ISD, [and] Aransas County Facilities." The supreme court has interpreted "services" in Chapter 271 to broadly mean "any act performed for the benefit of another." *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 629 (Tex. 2020) (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010)). The governmental entity need not be the primary beneficiary under the contract, but it must receive some direct benefit for Chapter 271's waiver to apply. *Id.* Conversely, an "indirect, attenuated" benefit will not trigger the waiver. *Id.* (quoting *Kirby Lake Dev.*, 320 S.W.3d at 839). Performing a service that a governmental entity was otherwise contractually obligated to perform constitutes a direct benefit to that entity. *Byrdson Servs., LLC v. S. E. Tex. Reg'l Plan. Comm'n*, 516 S.W.3d 483, 486 (Tex. 2016).

Aransas County and the ISDs were clearly the primary beneficiaries under the contract; NorthStar performed sixty-five separate projects on buildings owned by these distinct governmental entities, including a courthouse, detention center, library, and numerous schools. *See id.* at 487 (recognizing homeowners as primary beneficiary under reconstruction services contract). NorthStar notes that WTRCA, MCSIP, and RPA were formed for similar purposes and suggests that it provided all three a direct benefit by fulfilling the disaster services contemplated by their respective interlocal agreements. NorthStar fails to recognize that WTRCA and MCSIP have a different relationship with Aransas County and the ISDs than RPA does.

WTRCA, MCSIP, Aransas County, and the ISDs are all members of RPA, but

10

Aransas County and the ISDs are not members of WTRCA or MCSIP. As their names suggest, WTRCA is comprised of rural counties in West Texas, and MCSIP consists of Matagorda County and other political subdivisions in that county. In other words, whatever obligations WTRCA and MCSIP may have to their respective members regarding disaster services, their obligations to Aransas County and the ISDs are limited to those provided for in the Interlocal Agreement.

The purpose of the Interlocal Agreement is "to achieve efficiencies in the performance of certain governmental functions." The agreement contemplates that members will pool their resources to procure goods and services, with each member responsible for its portion of the costs.[3] *See* TEX. GOV'T CODE ANN. § 791.025(a) ("A local government, including a council of governments, may agree with another local government or with the state or a state agency, including the comptroller, to purchase goods and services."). Here, that meant collectively bargaining with NorthStar for presumably better terms under the MSA than the members could have achieved individually. *See id.*

But contrary to NorthStar's suggestion, nothing in the Interlocal Agreement obligates one member to perform governmental functions on another member's behalf. *See Byrdson*, 516 S.W.3d at 486. Thus, while NorthStar performed disaster recovery and restoration services for Aransas County and the ISDs, it did not perform any services that WTRCA or MCSIP would have otherwise performed as co-members of RPA. *See id.*

---

[3] The Interlocal Agreement provides that RPA will "divide the cost of services between the [members]," and "no [member] shall be liable for any debt or liability incurred on behalf of another [member]."

Because the trial court erred by finding that Chapter 271's waiver applied to WTRCA and MCSIP, we grant appellants' second issue in part.

## C. Fact Issue on Direct Benefit to RPA

On the other hand, based on the limited record before us, whether Chapter 271's waiver applies to NorthStar's contract claims against RPA is inconclusive at this point. Consequently, RPA did not "meet the summary judgment standard of proof" to prevail on its plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228.

RPA relies on three pieces of evidence to negate the trial court's jurisdiction—a one-page affidavit by Aransas County Judge C.H. Mills Jr., the Interlocal Agreement, and the contract. Judge Mills states in his affidavit that "RPA owns no real property, and RPA owns no property upon which [NorthStar] alleges it performed remediation work." As discussed above, the fact that Aransas County and the ISDs were the primary beneficiaries under the contract does not necessarily prove that RPA did not receive a direct benefit. *See, e.g., Austin Bridge*, 601 S.W.3d at 630 ("The contract may primarily require Austin Bridge to provide construction services to the District, but it further requires Austin Bridge to provide services directly for the River Authority, fulfilling the River Authority's management obligations."). Other than authenticating the Interlocal Agreement, nothing else in Judge Mills' affidavit advances RPA's position.

That leaves us to compare the Interlocal Agreement and the contract. We conclude that RPA's obligations under the Interlocal Agreement are sufficiently broad to potentially overlap with the scope of work performed by NorthStar. As the administrative agency responsible for overseeing the performance of the Interlocal Agreement, RPA is expressly

12

obligated to its members to "employ personnel and independent contractors, perform administrative activities, provide administrative services[,] and generally organize the activities contemplated [by the Interlocal Agreement]." The Interlocal Agreement further provides that "RPA recognizes that the governmental functions to be performed . . . require input and direction from trained professionals."

The work order, which was "requested by [RPA] or Its Members" and executed by RPA's Director, includes a non-exhaustive list of twenty-eight services to be performed by NorthStar for Aransas County and the ISDs. Viewing the evidence in the light most favorable to NorthStar, some of the services listed are "administrative" or "organiz[ational]" in nature, including "[p]rocurement of temporary office spaces" and "execut[ing] leases on behalf of RPA [m]embers." *See Alamo Heights*, 544 S.W.3d at 771 (explaining that when reviewing evidentiary pleas, courts "must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor" (citing *Miranda*, 133 S.W.3d at 228)). Thus, NorthStar may have fulfilled some of RPA's obligations to Aransas County and the ISDs under the Interlocal Agreement, which would be a direct benefit to RPA.[4] *See Austin Bridge*, 601 S.W.3d at 629–30; *Byrdson*, 516 S.W.3d at 487.

It was RPA's burden to present sufficient evidence to negate the trial court's jurisdiction over NorthStar's contract claims. *See Miranda*, 133 S.W.3d at 228. Because the evidence raised a fact issue regarding whether RPA received a direct benefit, the trial

---

[4] Based on the limited record before us, we do not know whether all the services contemplated by the work order were actually performed. It is also unclear to what extent, if at all, RPA directly benefited from the "input and direction" of NorthStar.

13

court did not err by denying RPA's plea to the jurisdiction with respect to NorthStar's contract claims. *See Byrdson*, 516 S.W.3d at 484 ("When evidence is presented with a plea to the jurisdiction, the trial court may rule on the plea as a matter of law if the evidence does not raise a fact issue on the jurisdictional question." (citing *Miranda*, 133 S.W.3d at 227–28)). Appellants' second issue is denied in part.

## D.    No Waiver for Quantum Meruit Claims

By their third issue, appellants submit that Chapter 271 only waives immunity from "a claim for breach of contract," and thus, the trial court does not have jurisdiction over NorthStar's extra-contractual claims for quantum meruit. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. We, along with many of our sister courts, have concluded that Chapter 271 does not waive immunity from quantum meruit claims. *Vantage Sys. Design, Inc. v. Raymondville Indep. Sch. Dist.*, 290 S.W.3d 312, 316–17 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied); *see, e.g.*, *City of Willow Park v. E.S.*, 424 S.W.3d 702, 712 (Tex. App.—Fort Worth 2014, pet. denied) (noting that "our sister courts have uniformly held that [§] 271.152 does not provide for a waiver of immunity from quantum meruit claims" before concluding the same).

In the trial court, NorthStar conceded that Chapter 271 did not extend to claims for quantum meruit and stated its intent to voluntarily dismiss the claims. On appeal, appellants allege that "[n]o such notice was ever filed" and ask us to dismiss the claims. The record before us shows that, despite its stated intentions, NorthStar's claims for quantum meruit remain live. Accordingly, we sustain appellants' third issue. *See Vantage*, 290 S.W.3d at 316–17.

14

**E.      Opportunity to Conduct Jurisdictional Discovery**

Finally, if we find any of its claims jurisdictionally infirm, NorthStar contends that remand rather than dismissal is appropriate because it did not have a full and fair opportunity to develop the jurisdictional record. *See Miranda*, 133 S.W.3d at 227 ("When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable."). Prior to the trial court's ruling on the plea, NorthStar attempted to depose a corporate representative for each appellant on the narrow topic of immunity. NorthStar also served appellants with written discovery on the question of immunity. According to NorthStar, appellants successfully resisted those attempts at jurisdictional discovery, and the trial court simply denied the pleas based on the record before it. NorthStar argues that without the benefit of jurisdictional discovery, it has been placed at a disadvantage on appeal through no fault of its own.[5]

Appellants do not dispute NorthStar's account of the procedural history; instead, they argue that "every document that is needed to determine the jurisdictional issues is already in the record, and there are no fact questions regarding those documents." We agree that is true for WTRCA and MCSIP. The contract and several interlocal agreements speak for themselves, and there is simply no suggestion that NorthStar provided WTRCA or MCSIP with a direct benefit under the contract. Additionally, interpreting Chapter 271's

---

[5] NorthStar seemed to take a contradictory position in the trial court, saying at the hearing that "[w]e don't believe we need additional discovery after we looked at the caselaw."

15

waiver and its application to quantum meruit claims is a pure question of law for a court, not a fact finder, to decide. *See Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689 (Tex. 2020) (citing *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008)). Because the pleadings and record conclusively negate the trial court's jurisdiction over these claims, we decline NorthStar's request to conduct jurisdictional discovery. *See Miranda*, 133 S.W.3d at 227–28.

## IV.  CONCLUSION

We affirm the portion of the trial court's order as to NorthStar's contract claims against RPA, and we reverse and render a judgment of dismissal as to the remainder of NorthStar's claims.

GINA M. BENAVIDES
Justice

Delivered and filed on the
5th day of May, 2022.

16